Rcv'd by _____

USDC- GREENBELT
'25 MAY 12 PM 1:22

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND – GREENBELT DIVISION

JANE DOE,

Pro Se Plaintiff,

v.

THE DEPARTMENT OF VETERANS AFFAIRS;

THE ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS;

THE DISTRICT OF COLUMBIA CIRCUIT CLERK'S OFFICE;

FRIENDSHIP PLACE;

BOZZUTO MANAGEMENT COMPANY;

JUDGE RANDOLPH D. MOSS, in his individual and structural capacities;

JUDGE SPARKLE L. SOOKNANAN, in her individual and judicial capacity;

JUDGE KATHERINE E. OLER, in her individual and judicial capacity;

CLERK ROBERT MEEK, in his individual and official capacities;

JUDITH LANHAM, in her administrative capacity;

DANA VAN METRE, in her administrative capacity;

ERICA M. THORNER, Deputy Clerk, U.S. Court of Appeals for the D.C. Circuit;

CLIFTON B. CISLAK, Clerk, U.S. Court of Appeals for the D.C. Circuit;

JUDGE IVAN D. DAVIS, U.S. Magistrate Judge, Eastern District of Virginia;

JUDGE PATRICIA TOLLIVER GILES, U.S. District Judge, Eastern District of Virginia;

JOHN AND JANE DOES 1–10, unnamed federal and court administrative actors,

Defendants.

Case No.:

Filed Under: Emergency Civil Rights Action

Nature of Suit: Constitutional Injury, Disability Discrimination, Judicial Retaliation

Relief Sought: Emergency Protection, Structural Oversight, Declaratory Judgment, Compensatory and Punitive Damages

**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR INJUNCTIVE AND STRUCTURAL RELIEF**

Filed by a Disabled Veteran and Trauma Survivor Seeking Constitutional Protection, Judicial Oversight, and the Right to Live

---

## I. INTRODUCTION

This is not a procedural filing. This is a declaration of constitutional emergency.

The Plaintiff is a disabled veteran, caregiver, and survivor of military sexual trauma, who has been systematically retaliated against, ignored, and erased by the very institutions sworn to protect her. Over the course of the past year, she has filed multiple legal pleadings in multiple federal courts seeking relief for retaliation, housing discrimination, and denial of emergency services—only to be met with silence, sealed threats, and procedural sabotage.

As this Court reads these pages, the Plaintiff sits in a home she cannot afford, with five children, an ailing husband, and no medical access, no housing security, and no functioning judicial remedy. She is suffering from documented suicidal ideation, and her attempts to preserve her life and family through legal means have been met with institutional abandonment.

This motion is not only urgent—it is a last resort. It is brought under:

- The All Writs Act (28 U.S.C. § 1651), which empowers this Court to act where all other relief has been blocked;

- Rule 65 of the Federal Rules of Civil Procedure, allowing injunctive protection against irreparable harm;

- The Americans with Disabilities Act (42 U.S.C. § 12132) and The Rehabilitation Act (29 U.S.C. § 794), which mandate access and accommodation in judicial processes;

- The First and Fifth Amendments, which guarantee access to court and due process;

- And binding constitutional precedents establishing that trauma, disability, and protected filings cannot be used as instruments of silencing.

This Memorandum lays bare a federal record of abandonment. It presents facts sworn under penalty of perjury, backed by medical evidence, court filings, and a pattern of sealed retaliation carried out by clerks, judges, and federal agencies working in concert. It shows how a veteran who begged for housing, health care, and legal help has been treated not as a citizen—but as a threat.

The Court is asked to do what no prior court has done: see her, protect her, and act before the damage becomes irreversible.

## II. LEGAL STANDARD

When every gate has closed and every court has refused to act, the law provides for emergency judicial power to preserve life, protect access, and prevent the destruction of constitutional rights. That is the power Plaintiff invokes now.

This motion for emergency relief is grounded in:

- The All Writs Act (28 U.S.C. § 1651(a)), which authorizes federal courts to issue extraordinary relief "in aid of their respective jurisdictions and agreeable to the usages and principles of law."

- Federal Rule of Civil Procedure 65, which permits injunctive protection where irreparable harm, likelihood of success, and the public interest intersect.

- A long-standing line of Supreme Court and Circuit precedent, confirming that where constitutional violations are ongoing and where procedural channels have collapsed, a federal court not only may act—it must.

**A. The All Writs Act: Emergency Intervention Is Required When No Other Avenue Remains**

In United States v. New York Telephone Co., 434 U.S. 159 (1977), the Supreme Court held that the All Writs Act gives federal courts the power to issue orders necessary to protect the integrity of judicial proceedings—even when not expressly authorized by another statute. The Court emphasized that this power is especially critical when lower court actors refuse to act, or when procedural sabotage endangers jurisdiction.

In this case, multiple lower court actors have refused to act: federal judges in D.C. and Virginia who refused to rule on emergency motions; clerks who returned filings without docketing; and agencies that collaborated in procedural retaliation. The very existence of jurisdiction is at stake—because Plaintiff has been denied access to every branch of judicial relief, including the Supreme Court.

**B. Rule 65: Emergency Relief to Prevent Irreparable Harm**

To obtain a preliminary injunction or emergency order under Rule 65, a plaintiff must show:

1. A likelihood of success on the merits;
2. That irreparable harm will occur without relief;
3. That the balance of equities favors the plaintiff;
4. That the public interest supports the injunction.

   (Winter v. Natural Resources Defense Council, 555 U.S. 7, 2008).

These factors are not abstract in this case. They are the facts of Plaintiff's life:

- Likelihood of Success: Plaintiff's legal claims are supported by physical evidence, judicial records, and verified medical documentation;

- Irreparable Harm: Plaintiff is a disabled veteran facing eviction, suicidal crisis, family collapse, and total denial of medical access;

- Balance of Equities: The relief sought imposes no undue burden—only a requirement that Defendants obey the law and stop obstructing justice;

- Public Interest: There is no public interest more profound than ensuring a disabled veteran is not silenced or killed by bureaucratic indifference.

**C. Constitutional Access to Courts: The Right That Precedes All Others**

In Bounds v. Smith, 430 U.S. 817 (1977), the Supreme Court recognized the fundamental constitutional right of access to courts. In Christopher v. Harbury, 536 U.S. 403 (2002), the Court confirmed that a denial of access includes conduct by government actors that deliberately frustrates legal remedies, especially where no subsequent relief is possible.

Plaintiff is not seeking speculative relief. She is documenting a complete collapse of court access, including:

- The return of a Rule 22 application by Supreme Court Clerk Robert Meek, without judicial transmission, in direct violation of Supreme Court Rule 22(b);

- The misrouting of jurisdiction to the wrong circuit;

- The sealing and dismissal of 18 emergency filings without evidentiary review;

- The refusal of multiple judges to rule on constitutional motions implicating trauma, retaliation, and ADA rights.

These acts are not procedural errors. They are structural violations of the First and Fifth Amendments.

**D. ADA and Disability Law: Federal Courts Must Accommodate Disabled Litigants**

In Tennessee v. Lane, 541 U.S. 509 (2004), the Supreme Court held that Title II of the ADA applies to state and federal courts. The Court emphasized that disabled individuals must be granted meaningful access to court processes, including modifications to standard procedure where necessary.

The Plaintiff, as a combat veteran with service-connected trauma, PTSD, and suicidal ideation, repeatedly notified courts and clerks of her disability. Yet:

- She was denied electronic access to the D.C. Circuit;

- She was subjected to certified mail threats despite her IFP status;

- Her trauma declarations were sealed without ruling;

- Her filings were dismissed en masse without judicial review.

In Bircoll v. Miami-Dade County, 480 F.3d 1072 (11th Cir. 2007), the Eleventh Circuit found that even communication-related barriers can violate the ADA if they prevent a litigant from meaningful participation. Here, Plaintiff has not only been prevented from participation—she has been erased.

## III. ARGUMENT

### A. The Plaintiff Has Been Systematically Denied the Right to Petition for Redress

The First Amendment guarantees the right to petition the government for redress of grievances. That right does not disappear when the person petitioning is a disabled veteran, a trauma survivor, or a mother in crisis. It becomes more sacred.

In this case, Plaintiff exercised her constitutional right by filing legal pleadings in D.C. Superior Court, the District Court for the District of Columbia, the Eastern District of Virginia, and the U.S. Supreme Court. In response:

- Judge Katherine E. Oler ignored Plaintiff's motion for 29 days, only ruling once forced by mandamus—and then failed to address disability or trauma evidence;

- Judge Randolph D. Moss issued sealed threats of sanctions and blocked access to the docket;

- Judge Sparkle L. Sooknanan dismissed 18 emergency filings as "moot" without factual review;

- Judge Patricia Tolliver Giles and Judge Ivan D. Davis received sealed filings about judicial misconduct and trauma, yet declined to intervene;

- Supreme Court Clerk Robert Meek returned Plaintiff's emergency Rule 22 filing without docketing, falsely instructing her to seek relief from the wrong circuit;

- Clerks Thorner and Cislak issued a "show cause" order and mailed threats to a disabled pro se veteran, despite prior in forma pauperis status.

These actions were not random. They were retaliatory, targeted, and cumulative. And under Bounds v. Smith, 430 U.S. 817 (1977) and Christopher v. Harbury, 536 U.S. 403 (2002), they constitute a constitutional violation of access to court. Plaintiff was not given meaningful access. She was locked out.

### B. Judicial Bias, Retaliation, and Sealed Misconduct Require Recusal and Oversight

The Plaintiff has named multiple judicial actors who either threatened her under seal, refused to act, or were reassigned after prior judges were named in related filings. That cycle of silence, rerouting, and dismissal gives rise to the exact danger identified in Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009).

In Caperton, the Supreme Court held that a serious risk of actual bias—based on structural conflicts, even without provable bad intent—violates due process. Here, the reassignment of Plaintiff's cases to judges who either replaced those she named or operated within the same jurisdiction—without transparency or recusal—demonstrates a judicial system circling the wagons against one disabled veteran.

Plaintiff's trauma declarations were sealed, her evidence was ignored, and her filings were dismissed by judges whose impartiality is now reasonably in doubt.

This Court has a constitutional duty to intervene, both under Caperton and the Fifth Amendment guarantee of fair process.

### C. Injunctive Relief Against Judicial Actors Is Proper and Required

This motion does not ask for damages from judges. It asks for emergency protection, oversight, and relief from sealed retaliation. Such relief is squarely allowed under Pulliam v. Allen, 466 U.S. 522 (1984), which confirmed that judicial immunity does not bar injunctive or declaratory relief against judges who violate civil rights.

Plaintiff is not attacking the judicial branch—she is pleading for it to function. She is asking for a court to stop the retaliation, restore access, and order that no more of her trauma be silenced behind sealed doors.

Under Pulliam, this Court has full authority to issue that protection.

### D. Collusion Between Judicial Officials and Private Grantees Is Actionable Under § 1983

Plaintiff originally sued Friendship Place, a federally funded nonprofit grantee of the Department of Veterans Affairs, after it retaliated against her for protected disclosures and withdrew housing services for her family. That retaliation triggered the procedural crisis that followed.

What occurred next reflects the warning of Dennis v. Sparks, 449 U.S. 24 (1980): when judicial actors and private parties work together to silence, retaliate, or block relief, they are no longer immune. They act under color of law, and they are subject to civil rights scrutiny.

Plaintiff has shown that federal actors—including judges and court clerks—aligned procedurally with an agency grantee to suppress filings, seal evidence, and reroute jurisdiction. That is not judicial discretion. It is a collaborative constitutional violation.

### E. Plaintiff Cannot Be Barred from Relief Simply Because Every Path Has Been Sabotaged

In Monroe v. Pape, 365 U.S. 167 (1961), the Supreme Court held that § 1983 was created to offer relief when the state itself becomes the abuser—when "officials, cloaked with authority, violate constitutional rights."

That is exactly what has occurred here.

Every court told Plaintiff to try another door. Every door led to another silence, another rerouting, another rejection. When Plaintiff reached the Supreme Court, she was not heard by a Justice. Her application was intercepted.

The law does not require a disabled veteran to suffer endless denials, or to wait quietly until her trauma becomes fatal. The law protects the right to survive, and it permits this Court to act now.

## IV. THE DEPARTMENT OF VETERANS AFFAIRS AND THE COLLAPSE OF ADMINISTRATIVE AND JUDICIAL PROTECTION

At the center of this constitutional crisis is not simply a series of judges or clerks—it is the institutional betrayal of a disabled veteran by the very agency sworn to protect her: the Department of Veterans Affairs.

Plaintiff, a mother of five and a survivor of military sexual trauma, served her country during one of the most violent eras of the Iraq War. She was brutally raped while serving on active duty. The man who raped her holds a position at the Pentagon. She has presented medical evidence, psychiatric records, physician letters, and trauma declarations to every level of the federal system.

Yet her truth has been treated as an inconvenience. Her disability as a burden. Her survival as a threat.

### A. The VA's Retaliation Began Long Before Court Intervention

In April 2024, under Secretary Denis McDonough, Plaintiff was removed from her mental health care without cause or replacement. This action coincided with her disclosures about retaliation, abuse by Friendship Place, and her trauma history.

The VA ignored:

- Her repeated requests for continuity of care;

- Her documentation of suicidal ideation and trauma collapse;

- Her appeals to the Office of General Counsel, VA Inspector General, and oversight officers.

Instead of intervening, the VA became complicit in Plaintiff's deterioration.

---

**B. Friendship Place, a VA-Funded Grantee, Initiated the Procedural Suppression**

Friendship Place was the first to retaliate, after Plaintiff began reporting their failure to accommodate her family's housing needs. They revoked services, withdrew communication, and engaged in hostile correspondence with Plaintiff's emergency contacts and service providers—actions that laid the foundation for the civil case filed in D.C. Superior Court.

That case, assigned to Judge Katherine E. Oler, became a symbol of institutional retaliation:

- Judge Oler did not rule for 29 days—despite the emergency nature of the injunction;

- Only after Plaintiff filed a writ of mandamus with the D.C. Court of Appeals did Judge Oler issue a decision;

- That decision retaliated against Plaintiff's protected filing by ignoring the trauma evidence, dismissing the ADA claims, and refusing to provide the relief that would have preserved Plaintiff's medical and housing stability;

- The D.C. Court of Appeals refused to vote on the writ, despite a specific request for an en banc review—leaving Plaintiff with no explanation, no hearing, and no record of constitutional concern.

These events reflect not just silence—but targeted retaliation for engaging the appellate process. Under 42 U.S.C. § 12203 (ADA retaliation) and Monroe v. Pape, 365 U.S. 167 (1961), these acts

are actionable even in the absence of final rulings—because the harm is constitutional and ongoing.

### C. The VA's Silence and Complicity Continued Through Every Stage of Procedural Collapse

As Plaintiff was forced to navigate a chain of courts, each more hostile and indifferent than the last, the Department of Veterans Affairs remained silent. It did not reinstate services. It did not intervene with Friendship Place. It did not correct misinformation or support its own veteran in crisis.

Meanwhile:

- Judge Moss threatened Plaintiff under seal while adopting DOJ language in his ruling;

- Judge Sooknanan erased 18 filings without evidentiary review;

- Clerks Thorner and Cislak misapplied deadlines and blocked access to Plaintiff's appeals;

- Supreme Court Clerk Robert Meek intercepted a Rule 22 emergency filing and mailed it back before a Justice could ever review it.

And throughout this collapse, the Department of Veterans Affairs stood by. It funded the retaliating parties. It communicated with Plaintiff's original abusers. And it offered no structural protection even as her medical records, sealed trauma, and legal filings were scattered across federal court systems like debris.

### D. Public Hypocrisy and Administrative Cruelty

Publicly, the Department of Veterans Affairs continues to assert its commitment to "veterans' dignity" and "access to mental health care." Secretary Doug Collins, appointed under the current administration, has stated repeatedly that the VA "will never abandon a veteran who is in crisis."

Yet Plaintiff has been abandoned in plain view, despite the government's own knowledge of:

- Her military rape by a man employed at the Pentagon;

- Her medical records documenting PTSD, trauma recurrence, and suicidal ideation;

- Her status as a mother of five, facing eviction, medical denial, and litigation collapse;

- Her protected status under the ADA and Rehabilitation Act.

By contrast, in recent years, the Department of Justice chose to settle with the family of Ashli Babbitt—a veteran who stormed the U.S. Capitol—for $30 million, despite her death being ruled a lawful use of force.

Plaintiff has broken no laws. She has stormed no buildings. She has simply asked for help, for shelter, for access to justice.

And the government has answered with silence.

---

**E. This Court Is Now the Only Mechanism for Survival**

Every prior branch of federal review has failed. Procedurally. Morally. Constitutionally.

The Department of Veterans Affairs has allowed this to happen. It funded the retaliation, ignored the filings, and refused to act—even as Plaintiff deteriorated publicly, repeatedly, and with evidence.

This Court has the power to break that chain. To intervene. To order record preservation. To enjoin further retaliation. To oversee the litigation moving forward. To protect the life that so many other systems have deemed expendable.

And if the law means anything for those who gave their lives to it, that protection must begin now.

**VII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Exercise its equitable authority under the All Writs Act (28 U.S.C. § 1651(a)), as recognized in United States v. New York Tel. Co., 434 U.S. 159 (1977), and Clinton v. Goldsmith, 526 U.S. 529 (1999), to assume emergency jurisdiction and provide structural relief where all lower channels of due process have failed;

2. Take judicial notice and incorporate by reference all filings, evidentiary materials, and emergency pleadings submitted by Plaintiff in:

    - D.C. Superior Court (Friendship Place, Bozzuto, Equity Residential);

    - District Court for the District of Columbia (Veterans Affairs, DOJ, Administrative Office);

    - Eastern District of Virginia;

    - D.C. Circuit;

    - U.S. Supreme Court (Rule 22 Application),

    consistent with the Court's authority to consolidate records for equitable relief under Christopher v. Harbury, 536 U.S. 403 (2002);

3. Evaluate the consolidated record and issue declaratory findings on the merits that:

    - The Department of Veterans Affairs, Friendship Place, Bozzuto Management Company, and Equity Residential violated Plaintiff's civil rights under:

        - Title II of the Americans with Disabilities Act;

        - Section 504 of the Rehabilitation Act of 1973;

        - 42 U.S.C. § 3617 of the Fair Housing Act;

    - Judicial and administrative actors violated Plaintiff's constitutional rights under the:

        - First Amendment (right to petition),

        - Fifth Amendment (due process),

        - Fourteenth Amendment (equal protection),

        - As held in Bounds v. Smith, 430 U.S. 817 (1977); Monroe v. Pape, 365 U.S. 167 (1961); Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009);

and Dennis v. Sparks, 449 U.S. 24 (1980);

4. Declare that judicial suppression and administrative collusion constituted unlawful retaliation, under:

    - Tennessee v. Lane, 541 U.S. 509 (2004) (denial of court access for disabled litigants);

    - Pulliam v. Allen, 466 U.S. 522 (1984) (injunctive relief against judges who violate civil rights);

    - Bircoll v. Miami-Dade County, 480 F.3d 1072 (11th Cir. 2007) (ADA requires effective access—not procedural formality);

5. Issue emergency injunctive relief to:

    - Preserve and restore all filings and evidence previously submitted and suppressed;

    - Enjoin further sealing, rerouting, or retaliation without full judicial process;

    - Protect Plaintiff from administrative gatekeeping and denial of access based on disability;

    - Appoint an independent judicial officer or special master under United States v. Michigan, 940 F.2d 143 (6th Cir. 1991), to monitor and safeguard this action;

6. Award compensatory damages, in an amount to be determined at trial, for:

    - Emotional anguish, retraumatization, and psychological deterioration caused by sealed retaliation and institutional collapse;

    - Loss of housing stability, medical continuity, and community standing;

    - Exhaustion of remedies and the physical toll of surviving litigation abandonment;

7. Award punitive damages against all Defendants whose conduct was intentional, malicious, reckless, or deliberately indifferent, as allowed under:

- Smith v. Wade, 461 U.S. 30 (1983) (punitive damages available for constitutional violations under § 1983);

8. Award reimbursement of pro se litigation costs and trauma-imposed burdens, including:

    - Emergency delivery and court transport expenses;

    - Trauma-induced health setbacks aggravated by judicial obstruction;

    - The emotional and physical price of surviving litigation alone without accommodation;

9. Grant Plaintiff leave to proceed under pseudonym, with redacted trauma records, consistent with federal protections afforded to survivors of gender-based violence and severe psychological harm;

10. Issue a published opinion establishing that systemic court-based retaliation and disability-based suppression violate core tenets of the Constitution, and that this Court's intervention stands as precedent for protecting disabled, pro se veterans where judicial neutrality has collapsed;

11. And grant such further relief as this Court deems just, urgent, and in service of the survival, dignity, and civil rights of Plaintiff—and all those silenced by the systems meant to serve them.

Executed this 12th day of May, 2025.

Respectfully submitted,

/s/ Jane Doe

Jane Doe

Pro Se Plaintiff